UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------X
UNITED STATES OF AMERICA,

    -against-                                  ORDER
                                            No. 18-CR-0604 (JS)
TRAMAINE BROWN,

          Defendant.

---------------------------------X

APPEARANCES

For Defendant:      Tramaine Brown, Pro Se
                    Reg. No. 91240-053
                    338 Lamplighter Drive
                    Melbourne, Florida  32934

For United States:  Michael R. Maffei, Esq.
                    United States Attorney's Office
                    Eastern District of New York
                    610 Federal Plaza
                    Central Islip, New York  11722


SEYBERT, District Judge:

      Currently before the Court is the pro se motion of

Defendant Tramaine Brown ("Defendant") seeking compassionate

release in the form of a sentence reduction (hereafter, the

"Motion"). (See Motion, ECF No. 118; see also Reply, ECF No. 121;

Supplemental Reply, ECF No. 130.)  The Government opposes the

Motion.  (See Opp'n, ECF No. 119.)  For the following reasons, the

Motion is **DENIED**.[1]

_____

[1]  In his Motion, Defendant has also requested appointment of
counsel (hereafter, the "Appointment Request").  (See Appointment
Request at ECF p.2.)  "The Court denies Defendant's Appoint[ment

RELEVANT BACKGROUND

I.   Defendant's Underlying Conviction

The Court assumes the parties' familiarity with Defendant's conviction.  By way of general background:  As part of a large 2018 investigation into narcotics trafficking and gang activity on the East End of Long Island, law enforcement conducted several purchases of crack cocaine from Defendant at his residence, with the total amount of crack cocaine purchased directly from Defendant being approximately 305 grams.  (See Opp'n at 1-2 (citing Presentence Report ("PSR"), ECF No. 67 (sealed), at ¶6.)  Notably, as part of the investigation, video was obtained of the Defendant cooking powder cocaine into crack cocaine at his residence while a young child (presumed to be one of Defendant's wife's children) was in the home.  (See id. at 13; see also PSR at ¶¶5, 95 (identifying this situation as an aggravating factor for the Court's consideration in sentencing).)

---

Request].  '[A] defendant has no right to the assistance of counsel in filing a motion for compassionate release . . . .'"  United States v. Yong, No. 95-CR-0825, 2024 WL 3648259, at *5 (E.D.N.Y. Aug. 5, 2024) (quoting United States v. Fleming, 5 F.4th 189, 193 (2d Cir. 2021)); see also United States v. Manso-Zamora, 991 F.3d 694, 696 (6th Cir. 2021) ("[E]very federal court of appeals to address the issue has agreed that there is no constitutional (or statutory) right to appointed counsel in § 3582(c) proceedings.").  "In any event, Defendant's submissions show he is well-able to present his arguments in support of his Motion, which is fully briefed, and he does not require assistance in advancing said Motion."  Id.

When law enforcement executed a warrant at Defendant's residence, among other things, large quantities of narcotics and cash, as well as three firearms kept by Defendant to protect his drug business, were seized.  (See id. at 2 (citing PSR at ¶8).) Defendant was arrested on November 14, 2018.  (See id.)  Pursuant to a plea agreement, Defendant pled guilty to a one-count indictment charging him with conspiracy to possess with intent to distribute 280 grams or more of crack cocaine.  (See id. at 1.) On June 20, 2019, Defendant pled guilty to the one-count charge before the Magistrate Judge.  (See id.; see also Plea Hr'g Min. Entry, ECF No. 55.)  Said plea was accepted by the undersigned on July 18, 2019.  (See id.; see also ECF No. 61.)

The Probation Department determined Defendant's applicable Guidelines range was 120 to 135 months' imprisonment. (See PSR at ¶78.)  After considering the parties' respective responses to the PSR, on January 17, 2016, the Court sentence Defendant to, inter alia, 120 months of imprisonment; he will be subject to five years of supervised release.  (See Judgment, ECF No. 79.)  In sentencing Defendant, the Court determined the 120-month sentence was sufficient, but not greater than necessary, to comply with the purposes of the Section 3553(a) Sentencing Factors.  (See Statement of Reasons, ECF No. 80 (sealed), Section VIII.)

When he moved for compassionate release, Defendant was housed at Schuylkill Federal Correctional Institution ("FCI Schuylkill"), a low security correctional facility located in Minersville, Pennsylvania.  (See Motion at ECF p.2; Opp'n at 2.) Defendant is currently serving his sentence under the auspices of the Bureau of Prison's Orlando Residential Reentry Management Field Office ("Orlando RRM"); he resides in Melbourne, Florida. See Fed. Bureau of Prisons ("BOP"): Find an Inmate, Tramaine Brown (BOP Reg. No. 91240-053), https://www.bop.gov/inmateloc/ (last visited Nov. 6, 2024) (identifying Defendant's location as Orlando RRM) (hereafter, "Brown Location Information"); (see also Mar. 23, 2023 Notice of Change of Address, ECF No. 134).  He has an anticipated release date of May 23, 2026.  See Brown Location Information.

II.   Relevant Procedural History

On December 27, 2022, Defendant moved for compassionate release.[2] (See Motion.)  His main argument in support of his Motion was two-fold:  Being housed at FCI Schuylkill during the Pandemic, he was subjected to several COVID-19 outbreaks and concomitant lockdowns; and, because he was a former heavy smoker, was obese, had substance abuse issues, and was suffering an Achilles tendon injury that required surgery, he was at greater risk of harm if he

---

[2]  Defendant's Motion was undated, but was received by the Clerk's Office on December 22, 2021, the date it was filed in this case.

contracts COVID-19.   (See, e.g., id. at ECF pp.2-3, 9-10.)   He also argued for a reduced sentence based upon the crack versus cocaine disparity, relying upon proposed legislation, i.e., the EQUAL Act.   (See id. at ECF pp. 12-13.)   Further, addressing the Section 3553(a) Sentencing Factors, Defendant argued the onerous lockdowns and modified operations BOP engaged in, and to which he was subjected, "are more than enough to deter [him] from committing another crime" in addition to potentially facing the end of his marriage "due to his choices made".   (Id. at ECF p.14.)   Defendant averred he "has definitely learned his lessons, that has caused him to lose alot . . . ."   (Id.)

     In opposition, the Government maintained the BOP properly responded to the Pandemic, having instituted a responsive "action plan", with BOP's "strenuous efforts" having been "fruitful".   (Opp'n.)   Further, the Government asserted Defendant has been vaccinated (see id. at 4) and Defendant's status as a former heavy smoker who is obese and has sustained a prior Achilles injury did not rise to the level of extraordinary and compelling, thereby warranting compassionate release.   (See id. at 7-9.)   Nor did the harsh conditions Defendant endured constitute an extraordinary and compelling reason.   (See id. at 12.)   Finally, as to the Section 3553(a) Sentencing Factors, the Government argued consideration of said Factors outweigh any extraordinary and compelling reason warranting compassionate release.   (See id. at

13-14.)   It highlighted, not only was Defendant involved in a large-scale drug distribution operation, he (1) was also "found in possession of numerous firearms and huge amounts of narcotics", including approximately 630 grams of fentanyl, and (2) "was cooking powder cocaine into crack cocaine in his own residence with his own children present."   (Id. at 13.)   Thus, "'the need for the sentence imposed to promote respect for the law, and to provide for just punishment for the offense' further overrides the COVID-19 risks and demand the [D]efendant's continued detention."   (Id.) Moreover, "the need for general deterrence weighs against early release" since "[i]ndividuals considering participating in the violent, illegal drug trade which blights communities need to be sent a clear and unambiguous message that if they do so, they will be prosecuted, sentenced to substantial sentences and be required to serve every day of those sentences."   (Id. at 14.)

Defendant's Motion is ripe for decision.

### DISCUSSION

I.   Applicable Law

"A court may not modify a term of imprisonment once it has been imposed except pursuant to statute."   United States v. Rabuffo, No. 16-CR-0148, 2020 WL 2523053, at *1 (E.D.N.Y. May 14, 2020) (quoting United States v. Gotti, 433 F. Supp. 3d 613, 614 (S.D.N.Y. 2020)).   The First Step Act, which modified 18 U.S.C. § 3582(c), allows a court to modify a defendant's sentence upon a

motion of either (i) the Director of the BOP, or (ii) the defendant "after the defendant has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier."  18 U.S.C. § 3582(c)(1)(A); see also United States v. Thrower, 495 F. Supp. 3d 132, 137 (E.D.N.Y. 2020).  "The statute imposes three independent, necessary requirements for release: exhaustion of remedies, existence of an extraordinary and compelling reason for sentence reduction, and that the § 3553(a) [F]actors warrant reduction."  United States v. Hunter, No. 21-1773, 2022 WL 2288688, at *1 (2d Cir. June 24, 2022) (citing United States v. Keitt, 21 F.4th 67, 71 (2d Cir. 2021) (per curiam)).  "A defendant's failure to exhaust administrative remedies is a threshold matter preventing the [c]ourt from considering a Section 3582 application[, i.e., a motion for compassionate release]."  United States v. Robinson, No. 10-CR-0789, 2022 WL 16924176, at *3 (E.D.N.Y. Nov. 14, 2022) (quoting United States v. Alvarez, No. 89-CR-0229, 2020 WL 4904586, at *2 (E.D.N.Y. Aug. 20, 2020)).  And, "[i]f any one requirement is not satisfied, the district court may deny the motion without considering the remaining requirements."  Hunter, 2022 WL 2288688, at *1 (citing Keitt, 21 F.4th at 72-73).

Where exhaustion is satisfied, in their consideration of motions brought pursuant to the First Step Act, courts are not restricted to the Sentencing Commission's applicable policy statements, but may consider "the full slate of extraordinary and compelling reasons that an imprisoned person might bring before them in motions for compassionate release."  United States v. Brooker, 976 F.3d 228, 237 (2d Cir. 2020); see also Keitt, 21 F.4th at 71 ("A court deciding a compassionate release motion can consider 'the full slate of extraordinary and compelling reasons that an imprisoned person might bring before [it].'" (alteration in original) (quoting Brooker, 976 F.3d at 237)).  Indeed, "[t]he only statutory limit on what a court may consider to be extraordinary and compelling is that '[r]ehabilitation . . . alone shall not be considered an extraordinary and compelling reason.'" Brooker, 976 F.3d at 237-38 (emphasis and alteration in original) (quoting 28 U.S.C. § 994(t)); see also United States v. Ambrosio, 541 F. Supp. 3d 253, 254 (E.D.N.Y. 2021) (same).  "Additionally, district courts may consider 'intervening changes of law or fact in exercising their discretion to reduce a sentence pursuant to the First Step Act.'"  United States v. Monteleone, No. 92-CR-0351, 2023 WL 2857559, at *2 (E.D.N.Y. Apr. 10, 2023) (quoting Concepcion v. United States, 142 S. Ct. 2389, 2404 (2022)).

Even where extraordinary and compelling reasons exist, the Court must "consider all the Section 3553(a) [Sentencing

F]actors to the extent they are applicable, and may deny such a motion if, in its discretion, compassionate release is not warranted because Section 3553(a) [Sentencing F]actors override, in any particular case, what would otherwise be extraordinary and compelling circumstances." United States v. Davies, No. 17-CR-0057, 2020 WL 2307650, at *2 (E.D.N.Y. May 8, 2020) (citation omitted); see also United States v. Jones, No. 22-2008-CR, 2023 WL 8613867, at *2 (2d Cir. Dec. 13, 2023) (same). "The defendant bears the burden of showing that the circumstances warrant a sentence reduction." United States v. Sellick, No. 21-2328, 2022 WL 16936829, at *1 (2d Cir. Nov. 15, 2022) (summary order) (citing United States v. Jones, 17 F.4th 371, 375 (2d Cir. 2021)); see also United States v. Friedlander, No. 20-CR-0441, 2022 WL 2305370, at *3 (E.D.N.Y. June 24, 2022) ("A defendant 'bears the burden of showing that his release is justified.'" (quoting United States v. Patterson, No. 06-CR-0080, 2020 WL 3451542, at *1 (S.D.N.Y. June 23, 2020)).

II.  Application

    A. Exhaustion

        Here, there is no dispute that, when housed at FCI Schuylkill, Defendant properly exhausted the applicable administrative remedies. (See Opp'n at 2.) Therefore, the Court proceeds to consider whether Defendant can establish extraordinary and compelling circumstances warranting compassionate release.

See United States v. Lake, No. 14-CR-0264, 2023 WL 8810620, at *3 (E.D.N.Y. Dec. 20, 2023) (proceeding, where there was no dispute defendant had exhausted his administrative remedy, to "determine whether [d]efendant ha[d] met his burden of showing compassionate release [wa]s warranted").

B.    Defendant has Failed to Establish the Existence of Extraordinary and Compelling Circumstances

Defendant is currently 35 years old and asks the Court to consider the conditions at FCI Schuylkill in light of his being a former heavy smoker who is obese and has sustained an Achilles tendon injury.  He also claims the harshness of conditions at FCI Schuylkill warrants a sentence reduction.  Further, Defendant presses a crack versus cocaine disparity argument.  The Court finds all unavailing.

As to COVID-19 and Defendant's Medical Conditions: Because Defendant is no longer housed at FCI Schuylkill (see Notice of Change of Address, ECF No. 134), even if the Court were to consider his alleged medical conditions arguments, the underlying basis for Defendant's Motion is no longer relevant.  Moreover, "[s]ince the decline of COVID-19 cases and proliferation of vaccines, courts in this Circuit have generally rejected compassionate release motions based on the threat posed by the virus, asserting that 'the risks posed by the pandemic alone do not constitute extraordinary and compelling reasons for release,

absent additional factors.'" United States v. Johnson, 671 F.

Supp. 3d 265, 280 (E.D.N.Y. 2023) (quoting United States v.

Oquendo, No. 13-CR-0357, 2023 WL 199609, at *4 (S.D.N.Y. Jan. 17,

2023)) (emphasis added); see also Delacruz Santana, 2024 WL

4449443, at *6 ("[T]he mere possibility that [Defendant], who has

medical issues, may contract COVID-19 is not enough." (collecting

cases)). "In evaluating whether an individual's current risk from

the pandemic warrants compassionate release, courts have examined

their vaccine status, the COVID-19 situation at their specific

correctional facility, and whether their co-morbidities are being

managed." Id. (citations omitted). Further, as to COVID-19

variants, such variants are "considered less severe in causing

illness and death." Mayes v. United States, No. 12-CR-0385, 2023

WL 22632, at *4 (E.D.N.Y. Jan. 3, 2023).

Defendant does not deny he has been fully vaccinated.

(Compare Opp'n at 5, with Reply, in toto.) Additionally, as stated

above, Defendant is no longer housed at FCI Schuylkill, thereby

eliminating consideration of the status of that facility from the

Court's calculus. In any event, as this Court recently stated,

"in considering the COVID-19 situation at [a federal correctional

facility], one must recognize that the COVID-19 Public Health

Emergency ended on May 11, 2023." United States v. Wagner, No.

17-CR-0106, 2024 WL 2801981, at *5 (E.D.N.Y. May 31, 2024) (citing

U.S. Dep't Health & Human Servs., Fact Sheet: End of the COVID-19

Public       Health       Emergency,       available       at
https://hhs.gov/about/news/2023/05/09/fact-sheet-end-of-the-
covid-19-public-health-emergency.html).   "Therefore, it is no
longer necessary for the BOP to engage in across-the-board special
operations."   Id.   And, "without COVID-19-related precautions"
being necessary, an inmate-defendant's COVID-19-related arguments
carry "little weight."   Id. (citing Jones, 17 F.4th at 375
(confinement in facility "where [COVID-19] counts are currently
low" was not "extraordinary and compelling" circumstance)).

      Further, the medical conditions of which Defendant
complains fail to rise to the level that would warrant
compassionate release.   Upon the record presented, Defendant has
failed to show that his medical conditions "so incapacitate[d] him
as to warrant a reduction of his sentence."   United States v. Lisi,
440 F. Supp. 3d 246, 251 (S.D.N.Y. 2020) ("BOP's guidance, read in
conjunction with the Application Notes to § 1B1.13 [of the U.S.
Sentencing Guidelines], indicate that a defendant's medical
condition must be one of substantial severity and irremediability,
and [defendant] has not shown that he suffers from such
conditions."); see also United States v. Brown, No. 12-CR-0120,
2024 WL 1639926, at *2 (E.D.N.Y. Apr. 16, 2024) (denying
compassionate release where defendant "d[id] not allege that his
health conditions—hypertension, high cholesterol, and unspecified
'other conditions'—[we]re terminal, diminish[ed] his ability to

provide self-care, or require[d] long-term or specialized care that [wa]s not being provided at" the federal correctional facility where he was housed); United States v. Mohammed, Nos. 18-CR-0509, 20-CR-0581, 2024 WL 2701639, at *2-3 (E.D.N.Y. May 18, 2024) (denying compassionate release where defendant failed to meet the U.S.S.G. § 1B1.13(b)(1), i.e., "Medical Circumstances", criteria). Therefore, this avenue for relief is a dead-end.

As to Harshness of Incarceration Caused by the Pandemic: "Undoubtedly, 'a day spent in prison under extreme lockdown and in well-founded fear of contracting a once-in-a-century deadly virus exacts a price on a prisoner beyond that imposed by an ordinary day in prison.'" Johnson, 671 F. Supp. 3d at 281 (quoting United States v. Mcrae, No. 17-CR-0643, 2021 WL 142277, at *5 (S.D.N.Y. Jan. 15, 2021)). Consequently, "particularly for defendants who have (i) served long sentences and (ii) been detained for the entirety of the pandemic," courts have been willing to conclude that "pandemic-induced conditions of confinement can constitute extraordinary and compelling circumstances warranting compassionate release." Id. (quoting Oquendo, 2023 WL 199609, at *5, and collecting cases) (emphasis added); see also United States v. Russo, 643 F. Supp. 3d 325, 333 (E.D.N.Y. 2022) ("In addition to the health risks posed by the pandemic, the restrictions at [federal correctional facilities] during the pandemic have made [defendants'] incarceration[s] much more punitive than originally

contemplated at the time of sentencing[s]." (citing United States

v. Rodriquez, 492 F. Supp. 3d 306, 311 (S.D.N.Y. 2020)).

Yet, to the extent Defendant claims the Pandemic has

made his incarceration more punitive than anticipated, "these

hardships do not set [him] apart from the rest of the BOP inmate

population and therefore do not, alone, constitute extraordinary

and compelling reasons for his release.'" United States v.

Johnson, No. 98-CR-0860, 2021 WL 1207314, at *4 (E.D.N.Y. Mar. 31,

2021)); see also, e.g., United States v. Veliu, No. 17-CR-0404,

2022 WL 2484240, at *5 (E.D.N.Y. July 6, 2022) ("[T]he conditions

of confinement during the pandemic [do not] give rise to

extraordinary and compelling circumstances.  Although the Court

acknowledges that 'the pandemic has made prison conditions harsher

than usual, those are circumstances that all inmates have had to

endure.  While the Court does not minimize those difficulties,

they do not rise to the level of extraordinary and compelling.'")

(quoting United States v. Johnson, No. 18-CR-0907, 2021 WL 4120536,

at *3 (S.D.N.Y. Sept. 9, 2021)); United States v. Pinto-Thomaz,

454 F. Supp. 3d 327, 329 (S.D.N.Y., 2020) (observing "it is hard

to see how" the BOP's implementation of various protocols in

attempting to contain the spread of COVID-19 "ma[d]e the situations

of [defendants] 'extraordinary' in terms of the statutory

requirement, for in these respects [the defendants] are no

different from a host of other prisoners").  Standing alone, the

harshness of conditions Defendant faced during the Pandemic were the same as those endured by his fellow inmates; in that sense, they were not extraordinary.  See, e.g., United States v. Martinez, No.03-CR-1049, 2022 WL 3019833, at *3 (E.D.N.Y. July 29, 2022) ("[G]eneralized COVID-19 concerns are not regarded as extraordinary and compelling reasons for compassionate release." (citations omitted)).  Nor, given the record, is this a case where, considering several circumstances in totality, the harshness factor should weigh in favor of finding an extraordinary and compelling reason for granting compassionate release.  Compare United States v. Amerson, No. 05-CR-0301, 2023 WL 4497767, at *6 (E.D.N.Y. July 12, 2023) (finding where, among other considered circumstances, defendant had served more than 18 years of a 32-year sentence, and suffered serious health conditions, including type II diabetes which was worsening and proving difficult for defendant to manage with necessary self-care, "the harshness of COVID-related restrictions weigh[ed] in favor of a sentence reduction even if they d[id] not independently constitute an extraordinary and compelling reason to grant compassionate release" (emphasis added)).

As to Alleged Disparity:   Defendant's disparity-in-sentencing is based upon the consideration of crack cocaine to powder cocaine ratio and proposed legislation, i.e., the EQUAL Act.  (See Motion at ECF pp.12-14.)  However, this Court

has recently rejected this argument in denying Defendant's Amendment 821 Motion (see Amend. 821 Motion, ECF No. 132; see also Order, ECF No. 140 (denying Amend. 821 Motion because "[i]t is based upon the EQUAL Act which is pending legislation and not law").) Further, as the Government aptly argued:

> First, even if the crack cocaine was to be equated to powder cocaine, [Defendant's] Guidelines offense level would be largely unchanged due to the immense quantity of fentanyl [he] possessed. Here, the Guidelines adjusted offense level was 34 before being adjusted for acceptance. When taking the disparity into account, the adjusted offense level would be 32. Second, the [10-]year mandatory minimum triggered by 280 grams of cocaine base pursuant to 21 U.S.C. § 841(b)(1)(A)(iii), can also be triggered by in excess of 400 grams of fentanyl pursuant to 21 U.S.C. § 841(b)(1)(A)(vi). Accordingly, there is no unfair disparity present in this case, as the [D]efendant's criminal conduct was not limited to just crack cocaine dealing, but instead involved crack, powder cocaine, marijuana, fentanyl and firearms.

(Opp'n at 14.) The Court agrees.

In sum, even considered in conjunction, Defendant has not presented extraordinary and compelling reasons[3] warranting a sentence reduction.

---

[3]  To the extent Defendant advanced an argument based upon his rehabilitation efforts, while laudable, even in combination with other factors, said rehabilitation is not enough to find extraordinary and compelling reasons to reduce Defendant's sentence.

C.    The Section 3553(a) Factors

"[A] district court may deny a motion for compassionate release in 'sole reliance' on the Section 3553(a) [Sentencing F]actors, without determining 'whether the defendant has shown extraordinary and compelling reasons that might (in other circumstances) justify a sentence reduction.'" Jones, 2023 WL 8613867, at *2; see also Jones, 17 F.4th at 374 ("[A] district court's 'reasonable evaluation of the Section 3553(a) [F]actors' is 'an alternative and independent basis for denial of compassionate release.'" (quoting United States v. Robinson, 848 F. App'x 477, 478 (2d Cir. 2021)).

> The [Section 3553(a) F]actors include "the nature and circumstances of the offense and the history and characteristics of the defendant," as well as the need for the sentence imposed "to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;" "to afford adequate deterrence to criminal conduct;" "to protect the public from further crimes of the defendant;" and "to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner."  18 U.S.C. § 3553(a)(1)-(2).

Johnson, 671 F. Supp. 3d at 283.

In addressing the Section 3553(a) Sentencing Factors, Defendant substantially advances the same reasons he presented for finding extraordinary and compelling circumstances.  (See Motion at ECF p.14-15.)  Further, he contends he is a different person

today and would not endanger the community.  (See id. at ECF p.15.)

He relies upon his "model conduct during his time in prison" in

support of his position.  (Id.)  The Court is unconvinced.

In denying Defendant's supplemental Amendment 821 Motion

(ECF No. 136), the Court considered the Section 3553(a) Sentencing

Factors and found consideration of same did not warrant granting

Defendant relief.    (See Order, ECF No. 140 (adopting and

incorporating by reference the reasons articulated by the

Government why consideration of the applicable Section 3553(a)

Sentencing Factors does not warrant granting a sentence

reduction).)  The same holds true here.  See, e.g., United States

v. Miller, No. 21-1538, 2023 WL 3807151, at *1 (2d Cir. June 5,

2023) (summary order) (stating district courts are accorded "the

greatest deference" "as to how to weigh each of the § 3553(a)

factors").

First, Defendant's offense for which he was convicted is

serious:  Defendant was involved in a large-scale drug distribution

operation, that included, inter alia, crack cocaine, other

narcotics, including approximately 630 grams of fentanyl, and

Defendant's possession of three firearms.  (See Opp'n to Amend.

821 Motion, ECF No. 137, at 6-7.)   Further, as the Government

astutely stated:    "What makes the circumstances of the

[D]efendant's crime even more reprehensible is that he was cooking

powder cocaine into crack cocaine in his own residence with his

own children present", which "was captured on video during the course of the investigation." (Id. at 7.) Second, this Court's 120-month sentence is needed to impose respect for the law and provide for just punishment since such a sentence is "among the best ways in which to communicate to the public that they will be protected, that the guilty will be punished, and the guilty will be required to serve the entire sentence." (Id.) Third, for individual and general deterrence purposes, it is necessary that those who participate in the illegal drug trade, which plagues Long Island communities, "be sent a clear and unambiguous message that if they do, they will be prosecuted, sentenced to substantial sentences and be required to serve every day of those sentences." (Id.) Finally, as the Government persuasively asserts:

> While the community believed the [D]efendant to be a normal family man, coaching kids' soccer, [he] was surreptitiously distributing thousands upon thousands of dollars' worth of cocaine and crack cocaine out of his home, where his children resided. The original plea took into consideration that a [10]-year sentence was appropriate for the full scope of the [D]efendant's criminal conduct and was not based solely on the crack cocaine mandatory minimum. A sentence below the 120 months' imprisonment imposed upon the [D]efendant would not [be] sufficient to achieve deterrence, protection of the public, or to promote respect for the law.

(Id. at 8 (emphasis added).) The Court concurs. Moreover, there is validity to the Government's final assertion that "by releasing the [D]efendant to a residential re-entry center so quickly", the

BOP has, essentially, diminished the "deterrent and protective effects of the Court's sentence." (Id.)  Thus, considering the Section 3553(a) Sentencing Factors and given Defendant's current situation, there is no reason for this Court to reduce Defendant's sentence.  Accordingly, the Court finds, even if Defendant had presented extraordinary and compelling circumstances warranting compassionate release, which he has not, the Section 3553(a) Sentencing Factors applicable in this case would override those circumstances.

## CONCLUSION

Accordingly, **IT IS HEREBY ORDERED** that Defendant's Compassionate Release Motion (ECF No. 118) is **DENIED** in its entirety without prejudice; and

**IT IS FURTHER ORDERED** that the Clerk of Court mail a copy of this Order to the Defendant at his current address of record.

**SO ORDERED.**

 /s/ JOANNA SEYBERT
Joanna Seybert, U.S.D.J.

Dated: November 14, 2024
       Central Islip, New York